UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JEFFREY GODWIN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:20-cv-1590-GMB |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

# **MEMORANDUM OPINION**

On February 15, 2018, Plaintiff Jeffrey Godwin filed an application for a period of disability and disability insurance benefits ("DIB"). His alleged disability onset date is January 9, 2017.[2] Godwin's application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 16, 2019 and denied Godwin's claims on December 20, 2019. Godwin requested a review of the ALJ's decision by the Appeals Council, which declined review on August 12, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Godwin's original alleged disability onset date was September 4, 2015, but at the hearing he amended his alleged onset date to January 9, 2017. R. 17.

Social Security Administration (the "Commissioner") as of August 12, 2020.

Godwin's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 14. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[3]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

---

[3] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255

F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Godwin bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Godwin was born in 1965 and was 51 years old on his alleged onset date. R. 25, 387.  His primary complaints are pain in his back, knee, and shoulders. R. 52, 53.  In his disability report, Godwin alleged the following medical conditions: lower back, left arm, and left knee pain; pain associated with a surgically repaired left rotator cuff; and emotional problems. R. 205.

Godwin completed the tenth grade and later received his GED.[4] R. 47.  His

---

[4] Godwin testified that he "didn't really get" his GED because his neighbor "had the answers and took [the test] online." R. 47.

past work experience includes employment as a poultry dressing worker and a materials handler. R. 69–70.  As a poultry dressing worker, he worked nine-hour shifts and lifted up to 50 or 60 pounds. R. 49–50.  Godwin stopped working as a poultry dressing worker in 2017 because his back "got so stiff" that he could hardly stand after his shifts. R. 50, 387.

Godwin testified that his pain occurs intermittently and makes him feel like the affected areas are "asleep." R. 56.  He claims that his lower back stiffens "all the way up to [his] neck" when standing still for longer than three minutes. R. 53, 57. He alleviates the pain by sitting down, walking around, or taking Tylenol. R. 57. Godwin estimates that he cannot walk farther than about 50 yards. R. 61.  He also testified that his shoulders have been in "bad shape" for about 15 years. R. 53, 55. He improved his left shoulder through surgery in October 2017, but his right shoulder now requires surgery. R. 55–56.  Godwin claims that he cannot lift any weight over his head and can lift and briefly carry no more than 30 to 40 pounds. R. 61.  Godwin's left knee has "been bad for years" and has been treated with steroid injections in the past. R. 53–54.

The ALJ issued his decision on December 17, 2019. R. 35.  Under step one of the five-step evaluation process, he found that Godwin did not engage in substantial gainful activity during the period from Godwin's alleged onset date of January 9, 2017 through his date last insured of March 31, 2017. R. 19.  The ALJ concluded

that Godwin suffered from the severe impairments of lumbar radiculopathy, major depressive disorder, and post-traumatic stress disorder.[5] R. 19. The ALJ noted that these medically determinable impairments cause more than minimal limitations to his ability to perform basic work activities. R. 20. But the ALJ concluded at step three of the analysis that none of Godwin's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 20.

Before proceeding to the fourth step, the ALJ determined that Gowin had the residual functional capacity ("RFC") to perform a limited range of medium work. R. 21. More specifically, the ALJ found that Godwin had the following limitations with respect to medium work, as defined in 20 C.F.R. § 404.1567(c):

> He could stand and walk six hours in an eight-hour day and sit six hours in an eight-hour workday. He could frequently climb ramps or stairs. He could never climb ladders, ropes, or scaffolds. He could frequently balance, stoop, kneel, crouch, or crawl. He must [avoid] frequent exposure to extreme cold, extreme heat, wetness, and humidity. He must have avoided all exposure to unprotected heights, unprotected moving mechanical parts, and dangerous machinery. He could understand, remember and carryout short simple instructions with customary work breaks. He could occasionally interact[] with supervisors, co-workers and the general public. He could respond appropriately to changes in a routine work setting which are gradually introduced.

R. 21. At the fourth step, the ALJ considered Godwin's age, education, work experience, and RFC in determining that he was not capable of performing his past

---

[5] The ALJ found Godwin's other alleged impairments to be non-severe. R. 20. Godwin does not challenge these findings.

7

relevant work as a poultry dressing worker or materials handler. R. 25. However, the ALJ determined that there were other jobs existing in the national economy that Godwin could perform, including work as an industrial sweeper cleaner, a linen room attendant, and a machine packager. R 26. Therefore, the ALJ concluded that Godwin was not disabled within the meaning of the Social Security Act from January 9, 2017 through March 31, 2017, the date last insured. R. 26. Based on these findings, the ALJ denied Godwin's application for benefits. R. 26.

## IV. DISCUSSION

Godwin argues that the ALJ did not properly assess the credibility of his subjective complaints of pain in his back, shoulder, and left knee. Doc. 17 at 5–12. The Commissioner contends that substantial evidence supports the ALJ's subjective complaint analysis. Doc. 18 at 5–14. For the following reasons, the court finds that substantial evidence does support the ALJ's determination and that the ALJ applied the proper standards to reach his conclusions.

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

8

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529.  If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d).  While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, laboratory findings, and statements by medical or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4).  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  The ALJ is not required to conduct an explicit symptom analysis, but the reasons for his findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Godwin's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that his statements

about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22–23. This determination is supported by substantial evidence.

Godwin is incorrect to contend that the ALJ did not properly consider the evidence in its entirety. Doc. 17 at 4. The ALJ thoroughly examined the medical evidence in the record, determined that Godwin's subjective complaints of pain were not entirely credible, and adequately articulated the reasons for this finding. R. 20-24; *see Foote*, 67 F.3d at 1562. More specifically, the ALJ found that Godwin's complaints of disabling pain were inconsistent with the following medical evidence:

- A January 9, 2017 urgent care visit where Godwin reported lower back pain and stiffness in his legs after working a shift at the chicken plant. R. 387. Godwin's lower back was tender and his left straight leg raise test was positive, but he was not in acute distress. R. 387–391.
- An April 26, 2017 follow-up visit that revealed no abnormalities in Godwin's extremities and examination notes that indicated his gait and station were normal. R. 393. The doctor continued the previous medication regimen. R. 392.
- A June 16, 2017 visit with an orthopedic specialist where Godwin reported right shoulder and left knee pain. Godwin reported taking over-the-counter anti-inflammatory drugs intermittently and difficulty with performing activities of daily living. R. 552. Some reduction of strength was detected in both shoulders. R. 551–552. X-rays revealed degenerative joint disease in the right shoulder and left knee. R. 554. Godwin reported that medication relieved his pain. R. 550. He was prescribed two pain medications and received a cortisone injection in his left knee. R. 555.
- During Godwin's repeated physical therapy visits beginning on October 25, 2017, he self-reported a decrease in pain levels and tightness in his left shoulder. R. 572, 575, 578, 586, 595, 605,

>  610, 615, 620, 625, 630.

R. 23–24.

On this record, the court finds that the ALJ's conclusion about Godwin's subjective complaints of pain is supported by substantial evidence. Godwin's medical examinations do present some abnormalities, but the medical records document improvement with medication and treatment. For example, Godwin reported in June 2017 that his pain was relieved by medication (R. 550) and in January 2018 that his knee improved after a cortisone injection. R. 409. He reported decreased pain in his left shoulder while undergoing physical therapy throughout late 2017. R. 572–630. And Godwin refused some avenues for further alleviating his pain by expressing a lack of interest in steroid injections and physical therapy, along with a fear of surgery. R. 54, 516. Because "a medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling," *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988), substantial evidence supports the ALJ's determination that Godwin's back, shoulder, and knee conditions were not disabling during the relevant period despite his subjective pain complaints.

Additionally, the record reflects that Godwin engaged in a somewhat normal level of daily activity, including caring for his mother, sweeping, mopping, doing laundry, going grocery shopping, attending football games, fishing, and helping his cousin care for chickens. R. 57, 63, 64. Godwin also testified that he could walk

11

approximately 50 yards and that he is able to lift and carry about 30 to 40 pounds, albeit for short distances. R. 22, 61. These activities further undermine his claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding that the ALJ properly found subjective complaints inconsistent with a record of simple daily activities).

As to the support for his subjective complaints, most of Godwin's evidence relates to medical examinations that occurred after his date last insured. Doc. 17 at 9–11. The burden is on Godwin, however, to present evidence establishing that he was disabled between January 9, 2017 and March 31, 2017. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining that the burden is on the claimant to establish that she was disabled on or before the date last insured). The medical examinations after this date are only relevant when they relate to prior conditions. *See Tredick v. Comm'r of Soc. Sec.*, 826 F. App'x 840, at *845 (11th Cir. Sept. 11, 2020) (citing *Payne v. Weinberger*, 480 F.2d 1006, 1007–08 (5th Cir. 1973),[6] and explaining that a medical consultant's post-insurance-date opinion can be considered to the extent that it confirms an inference drawn from medical evidence existing before the date last insured). Godwin has not established the relevance of these later medical examinations.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

12

In sum, the ALJ correctly considered "the consistency of [Godwin's] statements" with the remainder of the evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8.  The ALJ's determinations are supported by substantial evidence.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on August 19, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE